Dear Commissioner Laborde:
This is in response to your request for an opinion concerning alternate methods which may be used by the State of Louisiana (the "State") to finance the purchase of Hotel Dieu (the "Property"). Hotel Dieu, located on Perdido Street in New Orleans, is presently being operated as a private non-profit hospital by the Daughters of Charity, an order of Catholic sisters. The Daughters of Charity have agreed to sell the Property to the State or to the Office Facilities Corporation, a statutorily created non-profit corporation.
It has been suggested that the Louisiana Public Facilities Authority (the "LPFA") act as the entity to finance the purchase of the Property and lease it to the Department of Health and Hospitals or the Division of Administration pursuant to a lease which would contain an annual appropriation dependency clause. The lease rentals would be structured so as to be sufficient to pay debt service on bonds to be issued by the LPFA to purchase the Property.
The questions presented to this office for review and consideration are restated and addressed below:
 1. Assuming the owners of the Property agree, is it legally permissible for the State or the Office Facilities Corporation to assign to the LPFA its right to buy the Property?
The Office Facilities Corporation (the "Corporation") was authorized to be incorporated as a non-profit corporation pursuant to the provisions of the Office Facilities Corporation Act, La. R.S. 39:1798, et seq. Section 1798.6 of the Office Facilities Corporation Act provides in part as follows, with respect to the powers of the Corporation:
 A. In addition to the powers granted it by the General Nonprofit Corporation Law, Title 12 of the Louisiana Revised Statutes of 1950, the corporation shall have power to undertake any project, to provide for the financing thereof, and in connection therewith:
* * *
 (4) To mortgage all or any portion of its interest in a public facility or facilities and the property on which any such facility or facilities are located, whether owned or thereafter acquired, including the granting of a security interest in any property, corporeal or incorporeal, and to assign or pledge all or any portion of its interest in property, corporeal or incorporeal, and the revenues therefrom.
* * *
 (8) To enter into any and all agreements or contracts, execute any and all instruments, and do and perform any and all acts or things necessary, convenient, or desirable for the purposes of the corporation or to carry out any power expressly given in this Chapter. (Emphasis added)
The general law of contracts as set forth in Civil Code Article1984 provides,
 "Rights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its nature preclude such effects." (Emphasis added)
In addition to the above language from the Act creating the Corporation, the general law on the powers of non-profit corporations, La. R.S. 12:207, provides, in part:
 D. Except as otherwise provided in the articles or by-laws, a corporation may borrow money, purchase immovable property, or sell, lease, encumber or otherwise alienate any of its immovable property, only if a resolution so authorizing has been approved by the voting members at a regular or special meeting, convened after notice of its purpose. A resolution authorizing the borrowing of money need not specify the particular amounts, rates of interest or times of maturity of the loans, but these and similar provisions may be authorized by the directors. (Emphasis added)
The LPFA was created pursuant to an Indenture of Trust dated August 21, 1974 for the benefit of the State. The Governor, on behalf of the State, accepted beneficial interest therein by Executive Order No. 71 on August 27, 1974. The legislature, in Act 778 of 1978 added its assent and acceptance of the beneficial interest in the LPFA trust, as required by La. R.S.9:2342(A). The LPFA is a public trust and public corporation of the State of Louisiana organized pursuant to the Louisiana Public Trust Act, being Chapter 2-A of Title 9 of the Louisiana Revised Statutes of 1950, as amended (La. R.S. 9:2341-2347, inclusive).
The purposes of the LPFA are to promote and encourage public activities within the State, including the provision of facilities and services to the State and its agencies, instrumentalities, and political subdivisions, and to provide funds in furtherance thereof. The LPFA's Indenture of Trust provides that in order to promote, encourage, and further the accomplishment of activities which are, or may become, of benefit to the State and which have a public purpose, the LPFA is authorized to lease, sublease, rent, furnish, or provide hospital and other medical care facilities and services to and for the State. In particular, the LPFA is authorized in the Public Trust Act and in its Indenture of Trust, to act on behalf of its beneficiary, the State, for various purposes including the providing of health care facilities for the State and its citizens. La. R.S. 9:2341(B) specifically provides that "hospital, medical, health, nursery care, nursing care, clinical, ambulance, laboratory and related services and facilities" are authorized purposes for a public trust.
Having considered the foregoing provisions of general state contract and corporation law, as well as the specific statute dealing with the Corporation, the Indenture of the LPFA and other legal authority dealing with the LPFA, it is clear that the Corporation has the authority, after compliance with formalities, to assign its right to buy the Property to the LPFA. See Guste v. Nicholls College Foundation, 564 So.2d 682
(La. 1990), wherein a transfer of funds by the Nicholls State University Alumni Federation to the Nicholls College Foundation was held to be given and accepted "under authority of the constitution and laws of this state" as the funds were "transferred in the discharge of the Federation's constitutional or legal duties" and "were accepted by the Foundation, assumedly a nonpublic body (a nonprofit corporation) with a commitment to assist the Federation in carrying out its constitutional and legal duties in public education".
Likewise, it is the opinion of this office that the State is authorized to engage in a cooperative endeavor with the LPFA to acquire the Property and to include in such cooperative endeavor an assignment by the State to the LPFA, of the State's right to buy the Property. In this regard, Section 14(C) of Article VII
of the Louisiana Constitution of 1974 provides:
 For a public purpose, the state and its political subdivisions may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Pursuant to Article XII, Section 8 of the Constitution, the Legislature has established a system of public health including a hospital system for indigent persons. There can be no question that the acquisition of additional hospital facilities to be used in conjunction with Charity Hospital and Medical Center of Louisiana at New Orleans is a furtherance of that public purpose.
In that your request assumes that the owners of the Property are agreeable to the assignment, it is strongly advised that the owners of the Property appear as parties to or acknowledge the cooperative endeavor agreement which effects the assignment. Such acknowledgement would resolve any concerns created by provision number 13 of the letter of agreement dated August 6, 1992.
 2. If the LPFA purchases the Property, is it legally permissible for the State, a State agency, board or commission to enter into a negotiated lease of the Property from the LPFA?
Contracts and agreements for the lease or rental of space for the housing of state agencies, their personnel, operations, equipment, or activities are governed by the Louisiana Procurement Code (the "Procurement Code"), being Chapter 17 of Title 39 of the Louisiana Revised Statutes of 1950, as amended, (La. R.S. 39:1551 et seq.).
Section 1593 of the Procurement Code generally provides that, unless otherwise authorized by law, all state contracts shall be awarded by competitive sealed bidding.
The definition of "contract" is provided for in R.S. 39:1556(4) as follows:
 "Contract" means all types of state agreements, regardless of what they may be called, for the purchase of supplies, services, or major repairs. It includes awards and notices of award; contracts of a fixed-price, cost, cost-plus-a-fixed-fee, or incentive type; contracts providing for the issuance of job or task orders; leases; letter contracts; and purchase orders. It also includes supplemental agreements with respect to any of the foregoing. (Emphasis added)
The definition of "supplies" is provided for in R.S. 39:1556(23) as follows:
 "Supplies" means all property, including but not limited to equipment, insurance, and leases on real property excluding land or a permanent interest in land. (Emphasis added)
In addition to the general provision of the Procurement Code governing state contracts for leases on real property, the Procurement Code specifically provides, with respect to the advertisement and award of lease bids for housing state agencies, in Section 1643(A) as follows:
 "Every lease for the use of 2,500 square feet or more of space in a privately owned building entered into by a state agency as lessee shall be awarded pursuant to R.S. 39:1594 in accordance with the conditions for use set forth in that Section. No such lease shall extend beyond a period of ten years." (Emphasis added)
Section 1643(A) above would govern a lease of the Property by the State from the LPFA only if the Property, once purchased by the LPFA, would be considered a "privately owned building." As previously stated, the LPFA was created pursuant to an Indenture of Trust dated August 21, 1974 for the benefit of the State. The Governor, on behalf of the State, accepted beneficial interest therein by Executive Order No. 71 on August 27, 1974. The legislature, in Act 778 of 1978 added its assent and acceptance of the beneficial interest in the LPFA trust, as required by La. R.S. 9:2342(A). The LPFA is a public trust and public corporation of the State of Louisiana organized pursuant to the Louisiana Public Trust Act, being Chapter 2-A of Title 9 of the Louisiana Revised Statutes of 1950, as amended (La. R.S.9:2341-2347, inclusive).
This office has previously opined as to the nature of the LPFA and concluded that the LPFA is a unique public corporation. (See Attorney General Opinion No. 80-1364.) This conclusion is consistent with the case of Harris v. Trustees of Louisiana Public Facilities Authority, 356 So.2d 1039 (La.App. 1st Cir. 1977) wherein the Court of Appeal, First Circuit, citing the analysis of the trial court as to the nature of the LPFA held that the LPFA is a "public corporation":
 It is clear that a public trust authority created under the Public Trust Act is neither a political subdivision of the State nor a municipal corporation. It is a unique creature of the Legislature designated as a "public corporation" in R.S. 9:2341. It is a corporation created by the Legislature and empowered to act for public purposes. The establishment of such an entity has been said to be within the constitutional powers of the Legislature by the Supreme Court.
It is the opinion of this office that the provisions of Section 1643(A) set forth above are not applicable to a transaction whereby the LPFA would lease the Property to the State because once the Property is purchased by the LPFA it no longer is a "privately owned building" within the meaning of said Section 1643(A), because once acquired by the LPFA, ownership will vest in a public corporation.
The Procurement Code does permit intergovernmental agreements, which include the lease of real property, to be entered into independent of the public bidding requirements of the Procurement Code. In this regard, Sections 1703 and 1704 of the Procurement Code provide as follows:
 § 1703. Any public procurement unit may sell to, acquire from, or use any supplies belonging to another public procurement unit or external procurement activity independent of the requirements of Part III of this Chapter or of Title 38.
§ 1704. Any public procurement unit may enter into an agreement, independent of the requirements of Part III of this Chapter or Title 38, with any other public procurement unit or external procurement activity for the cooperative use of supplies or services, under the terms agreed upon between the parties.
A public procurement unit is defined in Section 1701 of the Procurement Code to mean either a local public procurement unit or a state public procurement unit. The definition of a local public procurement unit is provided in Section 1701(3) of the Procurement Code as follows:
 "Local public procurement unit" means any parish, city, town, governmental body, and any other subdivision of the state or public agency thereof, public authority, public educational, health, or other institution, and to the extent provided by law, any other entity which expends public funds for the acquisition or leasing of supplies, services, major repairs, and construction, and any nonprofit corporation operating a charitable hospital. (emphasis added)
It is the opinion of this office that the LPFA, a public authority, qualifies as a "local public procurement unit", thereby permitting the Central Purchasing Agency, within the Division of Administration or other purchasing agency of the State, to negotiate a lease of the Property from the LPFA.
While not specifically mentioned in your request for this opinion, it must be noted that provision #1 of the August 6, 1992 letter of agreement includes fixtures and equipment as part of the assets to be acquired from the Sisters of Charity. The State, the Office Facilities Corporation and the LPFA are all subject to the Public Bid Law set forth in Title 38:2211, et seq. It may be argued that the Public Bid Law was not designed to address the purchase of an operating enterprise, and therefore, its provisions relative to the purchase of movable materials and supplies are not applicable to this situation. However, in an abundance of caution, we would suggest that it may be appropriate to have the status of the fixtures and equipment clarified by having them declared by the seller prior to the sales transaction as immovables pursuant to the provisions of Civil Code Article 467. Such declaration would make clear that these items are essential parts of the on-going hospital operation rather than independent acquisitions of fixtures and equipment which would then be subject to other procurement procedures.
We feel that acquisition of the "usable inventory" as described in provision #2 of the August 6, 1992 letter of intent must be accomplished by means of a public bid process or pursuant to the provisions of La. R.S. 39:2212(k) if the seller can be considered a "qualified group purchasing organization" and the price for the inventory is less than the price for same on the state bid list.
While it may be argued that the lease of the Property from the LPFA would qualify as a sole source procurement pursuant to R.S.39:1597, this office does not have sufficient facts in its possession to make such a determination.
 3. Do the statutory provisions governing the Louisiana Health Care Authority (La. R.S. 46:701 et seq.) in any way preempt or prohibit the State or any of its agencies, boards or commissions from leasing the Property from the LPFA in the manner described above?
In answer to this third question, you are first referred to La. R.S. 36:251(B) relative to the Department of Health and Hospitals. This provision provides in part as follows:
 ". . . The Department of Health and Hospitals shall provide health and medical services for the uninsured and medically indigent citizens of Louisiana directly, through the operation of health care facilities or indirectly by agreement with the Louisiana Health Care Authority for the provision of medical and hospital services as authorized by law . . ." (Emphasis added)
Thus, it would appear from the above statutory language that the Legislature has not mandated that only the Louisiana Health Care Authority may provide health and medical services for uninsured and indigent citizens. This function may be provided also directly by the Department of Health and Hospitals. In any event, it would be well to note that Act No. 855 of the 1990 Regular Session of the Louisiana Legislature specifically required that a comprehensive plan be adopted and approved by the Legislature relative to the goals and operations of the Louisiana Health Care Authority. This plan was approved pursuant to Act No. 390 of the 1991 Regular Session of the Louisiana Legislature. The plan provides on pages 20, 37-38, and 46 for top priority to be given to the replacement of charity hospitals at New Orleans, Baton Rouge, and Pineville. Of these three projects, top priority is given to Charity Hospital at New Orleans.
The acquisition of Hotel Dieu by the State is to be accomplished with the view toward using the facility as the cornerstone for a new Charity Hospital and Medical Center of Louisiana at New Orleans. This acquisition is clearly authorized as a function of the Department of Health and Hospitals as provided in Title 36 of the Louisiana Revised Statutes and is consistent with the comprehensive plan of the Louisiana Health Care Authority for replacement of the Charity Hospital and Medical Center at New Orleans. Our research reveals no provision of law that would lead us to conclude that the Louisiana Health Care Authority in any way preempts the right of the Department of Health and Hospitals to acquire a medical facility for indigent care, and in fact is consistent with the comprehensive plan for the development and upgrading of the Charity Hospital System in the State.
 4. Is the LPFA authorized to purchase the Property and lease it to the State?
It is our understanding that the transaction contemplated would require the LPFA to issue lease revenue bonds to provide funds for the purchase by the LPFA of the Hotel Dieu Property. This Property would then be leased to the State under the terms of an agreement which would specify that the State's obligation is a year-to-year one and which would contain an annual appropriation dependency clause. Although the lease agreement itself would be for a term longer than one year, the State's obligation is limited by the annual appropriation dependency clause.
As previously stated, the LPFA is authorized in the Public Trust Act and in its Indenture of Trust, to act on behalf of its beneficiary, the State, for various purposes including the providing of health care facilities for the State and its citizens. In particular, La. R.S. 9:2341(B) provides for authorized public functions or purposes of public trusts and in particular provides that "hospital, medical, health, nursery care, nursing care, clinical, ambulance, laboratory and related services and facilities" are authorized purposes for a public trust. The Public Trust Act further authorizes the issuance of bonds by public trusts to finance the providing of such facilities. The Act further makes it clear that such financings may be secured by income from the facilities financed, including lease revenues, while the LPFA serves only as the nominal owner of the facility. As a public trust authority, the LPFA would not be directly involved in the use or operation of the Property. Based on our understanding of the facts as set forth above, this office is of the opinion that the LPFA is authorized, upon completion of all formalities required by law, to acquire the Property with its own funds raised from the sale of bonds which will in turn be secured by the year-to-year obligation to appropriate funds by the State for payment under the lease agreement.
In conclusion, it is the opinion of this office that: (i) with the consent of the owner of the Property it is legally permissible for the State or the Office Facilities Corporation to assign to the LPFA its right to buy the Property, (ii) it is legally permissible for the State or any of its agencies, boards or commissions to enter into a negotiated lease of the Property from the LPFA if the LPFA purchases the Property, and (iii) the equipment and useable inventory included in the transaction should be declared as immovable property pursuant to Civil Code Article 467 or acquired by means of public bid; (iv) the statutory provisions governing the Louisiana Health Care Authority in no way preempt or prohibit the State or any of its agencies, boards or commissions from leasing the Property from the LPFA; (v) the LPFA is authorized to acquire the Property with its own funds raised from the sale of bonds which will in turn be secured by the year to year obligation to appropriate funds by the State for payment under the lease agreement.
This opinion is limited to the issues expressly presented in your request, and should not be considered as an expression of opinion on other issues which may be implied by the present circumstances or which may arise because of changed circumstances. We have not been requested to provide nor have we provided any opinion as to the validity and legality of any provision in the August 6, 1992 letter of agreement.
Trusting this adequately responds to your request, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
RPI:MSH:GRD:jv